# SUPREME COURT

OF THE

## STATE OF IOWA

AT

## DES MOINES, MAY TERM A. D. 1906

AND IN THE SIXTIETH YEAR OF THE STATE.

---

STATE OF IOWA, Appellee, v. JOHN HAYDEN, Appellant.

Criminal law: CONTINUANCE. It was not error to refuse a continuance of a criminal cause on the ground of an absent witness, where such witness was desired for impeachment purposes and at the time the motion was made it did not appear that he would be needed; especially where the foundation for the introduction of the evidence was not laid during the trial.

Murder: SELF-DEFENSE. On a prosecution for murder the evidence is held insufficient to support a plea of self-defense.

Evidence of sanity. The opinion of a non-expert witness, in testifying to the sanity of a person, need not in all cases be limited to the facts previously detailed.

Objection to evidence. An objection to evidence which is not pointed out to the trial court will not be considered on appeal.

**Evidence:** BAD CHARACTER. The limitation of proof of a defendant's bad character to the time prior to the commission of the crime is not a matter of which he may complain, since the state may show his reputation down to the time of the trial as bearing upon his credibility.

**Improper evidence:** PREJUDICE. A defendant who answered that he had previously been convicted of a felony could not complain because subsequently asked if he was sentenced to the penitentiary, where the court sustained an objection to the question and immediately directed the jury not to consider it.

**Murder:** PRESUMPTION OF MALICE: INSTRUCTION. An unexplained killing with a deadly weapon raises a presumption of malice which will support a conviction, unless the defendant by his evidence shows a legal excuse or justification for his act.

**Weight and credibility of evidence:** INSTRUCTION. Failure to specially instruct on the question of expert testimony is not erroneous, where there was a general instruction as to the weight to be given the evidence and there was no request for further instruction on the subject.

**Unused witness:** PRESUMPTION: INSTRUCTION. The fact that a witness, called by the state, appeared but was not used, does not raise a presumption that he would not have given material testimony for the prosecution, and the defendant is not entitled to an instruction on the subject.

**New trial.** After judgment has been entered in a criminal case a petition for new trial will not be entertained.

*Appeal from Decatur District Court.*— HON. WILLIAM E. MILLER, Judge.

TUESDAY, JUNE 5, 1906.

INDICTMENT for murder. Verdict of murder in the second degree, and judgment of imprisonment in the penitentiary for the term of twenty years. Defendant appeals. — *Affirmed.*

*V. R. McGinnis* and *M. L. Temple,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

DEEMER, J.— The indictment is for murder in the first degree. That defendant shot and killed one Bracewell on the 8th day of January, 1904, is conceded; but it is contended on his behalf that his act in so doing was in self-defense, and testimony was adduced to show that defendant was insane when the fatal shot was fired. Defendant and decedent were farmers living near each other in Decatur county. On the morning of the fatal encounter deceased and his hired man, by the name of Peck, were hauling hay from defendant's land. As they left the field with the last load before dinner they noticed some cattle on defendant's land and a few upon the premises belonging to Bracewell. These cattle belonged to Bracewell. Reaching home, Bracewell and his man unhitched the team, fed them, and went into the house. At that time they noticed some one going toward the cattle as if he were trying to get around them to drive them off. Bracewell left the house and went out near a gate, apparently watching the man who was after the cattle. He thereupon had his boy get a horse for him, and Peck got another, and the two started on horseback toward the cattle, and as they approached saw the defendant. Peck was the first to reach defendant, and defendant said to him: "Do not take the cattle out. I want to see the other man first." He then said to Peck: "Don't take any offense at what I say. I don't mean any offense against you." To this Peck responded: "All right, Mr. Hayden. These are Mr. Bracewell's cattle, and it is you and him for it." Bracewell came up almost immediately, and Hayden then started toward the cattle. Bracewell moved off toward a haystack in the field. Hayden then left the cattle and came running back to where Bracewell was seated upon his horse. As he came he was swearing and cursing Bracewell and calling him vile names. He had his hand in his pocket, and as he came closer drew his coat and shook his fist at Bracewell and continued his cursing. Bracewell was in his shirt sleeves and had a buggy whip in his hand. As Hayden

came up Bracewell.threw his whip,. dropped the bridle, slid off his horse, and told Hayden that if he wished to fight all right. As he dismounted Hayden turned around and started to run. Bracewell immediately started after him, and as Hayden ran he began feeling in his pocket. Hayden ran sixty or seventy feet, and was getting away from Bracewell, when, having secured his revolver, he whirled around and shot twice; one load striking Bracewell, resulting in his death in a few hours. When the shots were fired Bracewell had stopped his pursuit and was standing with his left side toward Hayden. The ball from the revolver entered Bracewell's left side between the tenth and eleventh rib, went through the body, and lodged underneath the skin on the other side. This, in brief, is the state's version of the affair, although defendant had another account thereof; but, as the jury returned a verdict of guilty, we should, for the purpose of this appeal, treat the case as if these facts were established.

The case was set for trial on May 23, 1904, and on the 19th of that month defendant filed a motion for a continuance, based upon the absence of a witness who, it was claimed, 1. CRIMINAL LAW: continuance. would testify to certain statements made by Peck, the principal witness for the state, with reference to how the difficulty occurred. On the 19th of May, 1904, an order was made by the trial court for some of defendant's witnesses, and another was made on the 11th of that month. A subpœna was issued for the absent witness May 16th, and sent to the sheriff at Des Moines, where the witness resided, on the same day. Defendant's counsel were then informed that the witness had left Des Moines on the day the subpœna issued, but had been there prior to that date. The testimony which it claimed the absent witness would give was not substantive in character, and could not have been used except for impeaching purposes. At the time the motion was made it did not appear that the witness would ever be needed, and as the witness Peck was not, when on the witness stand, asked if he had made the state-

ment claimed to the absent witness, it does not anywhere appear that his testimony would have been admissible, even had he been present. Under this state of facts we must assume that the witness Peck was truthful, and that, in the absence of some showing to the contrary, he would have admitted the conversation had it occurred. Defendant did not see fit, for some reason, to ask him about it, and then to renew his motion for continuance, had the witness denied it. Moreover, there is no real conflict between Peck's statements while on the witness stand and what it is claimed he said to the absent witness. The discrepancies, if any, were so unimportant as to be immaterial. Again, the showing as to diligence is not strong, and there is no reason for interfering with the discretion lodged in the trial court in such matters. At any rate, prejudice is not shown; and, under the peculiar facts of this case, it is not to be presumed.

II. It is claimed that the state did not produce sufficient testimony to show that defendant was not acting in self-defense. The statement already made is sufficient answer to 2. MURDER: self- this proposition. Further, it is claimed that defense. the testimony shows conclusively that defendant was not responsible for his acts. This was purely a fact question for the jury, and with its finding we shall not interfere. The most that can be said in this connection is that defendant was an epileptic, but it does not appear that at the very time in issue he was suffering from an attack of that disease. Indeed, the contrary very clearly appears.

III. Certain rulings on the admission and rejection of testimony are complained of. Nonexpert witnesses were produced by the state to give testimony in rebuttal of that 3. EVIDENCE OF offered by the defendant with reference to his SANITY. unsoundness of mind. The question of which most complaint is made reads as follows: " Q. Taking into consideration your acquaintance with him and your conversation with him and his appearance and so on, what would you say as to the defendant, John Hayden, being of sound

mind?" The witness answered: "I would have to say he was of sound mind, so far as I know." This was after he had stated that he had been acquainted with defendant for a long time, had observed his appearance, conduct and manner, and had given an account of a meeting with him in the forenoon of the day of the homicide. It is true that the question does not expressly limit the opinion to matters which he had just detailed; but this is not always essential, when a nonexpert is testifying to sanity, rather than insanity. *Hull v. Hull,* 117 Iowa, 745; *Stutsman v. Sharpless,* 126 Iowa, 335; *Lamb v. Lippincott,* 115 Mich. 611 (73 N. W. 887.) Nothing need be said in addition to what is given in these cases. In *State v. Robbins,* 109 Iowa, 650, relied upon by appellant, the nonexpert was attempting to testify to the insanity of the person whose state of mind was in issue; and, as stated in the Hull case, such opinion must be based upon facts narrated by the witness. There was no error in the ruling.

Defendant was a witness on his own behalf, and the state, for the purpose of impeaching him, introduced witnesses to prove that his general moral character, prior to **4. OBJECTION TO EVIDENCE.** (January 8, 1904,) the day of the homicide, in the community in which he lived, was bad. Defendant objected as incompetent, immaterial, irrelevant, and not the proper form of question. It is now contended that the limitation to January 8, 1904, rendered the question objectionable. That objection, even if good, does not seem to have been made to the questions propounded, and is evidently raised for the first time in this court. Had it been made at the proper time, the question might have been so framed as to meet the objection. That was not done, and, as the objection did not point out the defect claimed, the trial court was justified in disregarding any other grounds than those stated.

Moreover, it appears that defendant gave his testimony in May, and the questions called for his character and repu-

tation prior to January 8th, of the same year, the time of the
5. EVIDENCE: bad homicide; the state thus excluding any reports
character.      that may have gained currency by reason of the
killing of Bracewell.   Of this defendant had no just ground
of complaint.   Surely his killing of Bracewell and the repu-
tation gained by reason thereof would not be likely to change
his previous bad character or reputation for the better.   The
state was not bound to exclude the transaction in question,
and might have called for his reputation down to the time of
trial; but its failure to do so was not prejudicial to defend-
ant.   There is no presumption, in the light of this record,
that defendant gained a new and a better reputation or
character in the four months intervening between the kill-
ing of Bracewell and his trial.   The instruction with refer-
ence to this matter was correct in that it told the jury to
consider defendant's bad moral character if shown, as bear-
ing upon his credibility as a witness, and for no other pur-
pose.

Upon his cross-examination defendant was asked if he
had ever been convicted of a felony, to which he responded
that he had been.   He was then asked if he was sentenced
6. IMPROPER EVI- to the penitentiary.   Defendant's counsel ob-
DENCE: preju- jected, and his objection was sustained.   Ob-
dice.
jection was then made because the question had been asked
in the presence of the jury, and the trial court immediately
directed the jury not to consider it, or to draw any infer-
ences therefrom.   There was no error here of which defend-
ant may justly complain.   This disposes of all rulings on
evidence of which complaint is made.

IV.   The instruction most bitterly complained of reads as
follows:   " Implied malice means that which may be re-
ferred from the acts and facts shown.   Thus, when a wan-
7. MURDER: pre- ton, wicked, cruel or revengeful act is shown,
sumption of the inference or implication may be drawn that
malice: in-
struction.      the person who did such an act was actuated by
malice.   And when one person assaults another with a deadly

weapon — that is, a weapon that will likely produce death — the law presumes malice from that fact alone, in the absence of proof, either direct or implied, to the contrary. The selection and use of a deadly weapon, such as a revolver, in a deadly manner, without legal excuse, raises a presumption and is evidence of malice." It has support in the following cases: *State v. Gillick,* 7 Iowa, 311; *State v. Ostrander,* 18 Iowa, 435; *State v. Hockett,* 70 Iowa, 442; *State v. Zeibart,* 40 Iowa, 169; *State v. Sullivan,* 51 Iowa, 142; *State v. Townsend,* 66 Iowa, 741; *State v. Roan,* 122 Iowa, 136; and, except for the last clause, in practically all the text-books and adjudicated cases. See Com. v. York, 9 Metc. (Mass.) 93 (43 Am. Dec. 373), opinion by Shaw, C. J. The statement that the facts referred to " raised a presumption and is evidence of malice " added nothing to what was already stated, and should be taken in connection with what preceded, to the effect that such presumption arose in the absence of other proof to the contrary. The rule almost everywhere is that from the mere fact of killing the inference of malice arises; the burden being on the prosecution to raise it to murder in the first degree, and on the defense to reduce it to manslaughter. See cases cited in 21 Am. & Eng. Ency. 140–170. Of course, we do not mean to say that a jury should ever be instructed that the burden is upon a defendant to show want of malice. We use the above expression for want of a better term in which to convey the thought. What we mean is that an unexplained killing with a deadly weapon is evidence of malice, and that the burden is on the accused in that sense that he must make proof of legal excuse, justification, or extenuation, or take the risk of a conviction upon the presumption or inference of malice. 3 Current Law, 1651; 5 Current Law, 1711 and cases cited; *State v. Moore,* 25 Iowa, 128; *Harkness v. State,* 129 Ala. 71 (30 South. 73) ; *People v. Phelan,* 123 Cal. 551 (56 Pac. 424) ; *Com. v. Webster,* 5 Cush. (Mass.) 295 (52 Am. Dec. 711). Moreover, the court fully and carefully explained all

the degrees of homicide, and the instruction upon manslaughter was as favorable to defendant as he could ask.

It is said that the court failed to instruct upon the question of expert testimony. There was a general instruction with reference to the weight and credibility of the several

8. WEIGHT AND CREDIBILITY OF EVIDENCE: instruction.

witnesses' testimony; and, in the absence of special request for further instructions, this was sufficient. *State v. House,* 108 Iowa, 69; *Long v. Insurance Co.,* 113 Iowa, 259.

Defendant asked the following instruction, which was refused: " The jury are instructed that, if the state has subpoenaed any witness to testify to any material fact at is-

9. UNUSED WITNESS: presumption: instruction.

sue in the cause and said witness appeared and was not used by the state, the jury has a right to presume that said witness would not have testified to any material matter in support of the state's contention." Whatever the rule in other states, this instruction was erroneous under our decisions, and was properly refused. We need not cite them, as they are familiar to the profession.

V. One ground of the motion for a new trial was misconduct of counsel for the state in his argument to the jury. We have examined the record upon this question, and do not find any such. abuse of the discretion lodged in the trial court as to justify us in interfering. *State v. McIntire,* 89 Iowa, 143. To set out the language used and complained of would unduly extend this opinion, and we must content ourselves with a bare statement of the conclusion reached.

VI. After the motion for new trial had been disposed of, and judgment had been pronounced, and appeal taken to this court, defendant filed what he called " petition to set

10. NEW TRIAL.

aside the verdict, vacate the judgment, and for a new trial," based upon proceedings of the grand jury which found the indictment which he claims were so irregular as to have justified the court in setting it

aside upon proper motion. Testimony was taken upon this petition, and, after the matter had been fully presented, the trial court denied it. Complaint is made of this. These proceedings were entirely irregular and without warrant in law. The case was already in this court on appeal; but, if this were not so, our criminal procedure does not recognize any such thing as a petition for a new trial after judgment. The petition was properly overruled. *State v. Bixby,* 39 Iowa, 465. Moreover, there was no such showing made as to justify the trial court in sustaining it.

Some other matters are discussed, but they have already been decided adversely to appellant, or are not of sufficient consequence to justify separate consideration.

There is no prejudicial error in the record, and the judgment must be, and it is, *affirmed.*