## STATE OF IOWA v. PIERCE WILSON, Appellant.

**Criminal law:** MURDER: INDICTMENT: SUFFICIENCY. To constitute
1 murder in the first degree the act causing death must have been done with specific intent to kill; and where the indictment so charges it will not be held insufficient because failing to allege in connection with a description of the situation of the parties that the assault was with like intent.

**Jurors:** DISQUALIFICATION: SELECTION AND RETURN: STATUTES. The
2 statutes governing the selection and return of jury lists by the judges of election are directory, only, and substantial compliance therewith is sufficient, unless it is made to appear that prejudice has resulted from a lack of strict compliance. Thus a failure to return the number of names apportioned by the auditor to an election precinct, or of the judges of the election to certify the list selected, was not such

a material departure from the statutes as will authorize a criminal defendant to complain that the statute was not followed; especially where all jurors upon the panel were qualified, and none resided in the precincts where the judges of election failed to return the requisite number of names, or to certify to the lists, and there was no showing that such precincts contained the requisite number of qualified jurors.

Criminal law: MURDER: INTOXICATION AS A DEFENSE: INSTRUCTION. Drunkenness is no defense for the crime of murder, except that it may be shown in the prosecution for murder in the first degree, only, which involves premeditation and a specific intent to kill; and then only as bearing upon the question whether the accused was guilty of the crime charged, or by reason of his drunken condition he was incapable of forming a specific intent, and was therefore guilty of a lesser offense included in the charge. The instruction in the instant case states the rule correctly and properly omitted reference to drunkenness in connection with the lesser or included offenses.

Instructions: REFUSAL OF REQUESTS. Where the instruction given fully covered the question, the refusal of requests on the same subject was not erroneous.

Criminal law: EVIDENCE: INSTRUCTIONS. Where it appeared on the prosecution of defendant for the murder of his wife that they had previously quarreled, but the evidence tended to show a reconciliation, the weight to be given the evidence of the previous quarrel on the question of malice aforethought was for the jury; and unless it appeared that the ill-feeling still existed the jury should not be told to disregard the trouble between them.

Same: CIRCUMSTANTIAL EVIDENCE: SUFFICIENCY. Each circumstance essential to establish the guilt of a defendant need not be proven beyond a reasonable doubt, when considered independently of the other evidence. It should be considered with the other connecting circumstances, and may thus be proven beyond a reasonable doubt.

Same: THREATS: INSTRUCTIONS. An instruction limiting the evidence of previous threats to the question of malice aforethought was properly refused; as the same is competent on the question of who was the aggressor. It was also properly refused because purporting to specially instruct the jury.

Same: EVIDENCE: ADMISSIONS. Where counsel for defendant in his opening statement to the jury admitted that deceased was shot and killed, the state was not required to prove such facts; as the admissions were in the presence of defendant, and in the absence of objec-

tion should be presumed to have been made with his consent and may be assumed as proven.

Same: INTOXICATION: MALICE: EVIDENCE. If a drunken man commits murder, unaccompanied by circumstances of provocation or justification, a finding of malice is justified though not expressly proven; but if there is evidence of provocation which, if acted upon immediately by a sober man, would be regarded as sufficient to reduce the offense to manslaughter, and the inquiry is whether the accused actually acted upon provocation, the evidence of intoxication may be considered in determining whether the act is attributable to malice, or to anger excited by the previous provocation.

Same: INSTRUCTIONS: NECESSITY OF REQUEST. Where the court instructed that unless the defendant acted with malice either express or implied he should be found guilty of manslaughter, and that all the evidence should be considered, failure to also charge that in determining whether the crime was murder or manslaughter the jury might consider the evidence of intoxication, was not prejudicial error, in the absence of a correct requested instruction on the subject; as the court was not required to specifically refer to the evidence of intoxication. The failure to so instruct in this case was especially harmless, as defendant denied he had been drinking, testified the killing was accidental, immediately following an assault upon him by deceased, and there was evidence of admissions that he killed deceased in self-defense.

*Appeal from Mahaska District Court.*—HON. B. W. PRESTON, Judge.

SATURDAY, NOVEMBER 22, 1913.

THE defendant was indicted for murder in the first degree and convicted of murder in the second degree. He appeals. —*Affirmed.*

*Dan Davis* and *McCoy & McCoy,* for appellant.

*George Cosson,* Attorney General; *John Fletcher,* Assistant Attorney General, and *James A. Devitt,* for the State.

LADD, J.—I. The indictment charged that defendant, ''upon the body of Josephine Wilson, then and there being

willfully, feloniously, deliberately, premeditatedly and of his

1. CRIMINAL LAW: murder: indictment: sufficiency.

malice aforethought, did commit an assault with a deadly weapon, being a revolver, then and there held in the hands of the said Peter Wilson and loaded and charged with powder and bullets, and then and there the said Peter Wilson did, with the specific intent to kill and murder the said Josephine Wilson, willfully, feloniously, deliberately, premeditatedly and of his malice aforethought shoot off and discharge the contents of said deadly weapon at, against and into the body of said Josephine Wilson, thereby willfully, feloniously, deliberately, premeditatedly and of his malice aforethought, inflicting in and upon the body of said Josephine Wilson mortal wounds, of which mortal wounds the said Josephine Wilson did then and there die.'' The particular criticism is that the assault was not alleged to have been with specific intent to kill, and, if the first part of the language quoted were to be considered alone, this might be true. That, however, described the situation of the parties generally, and, following it, the act constituting the crime is clearly defined. It is the act of taking the life of another which must have been done with specific intent to kill in order to constitute murder in the first degree. The act includes the assault, and the act of shooting off and discharging the revolver into the body of deceased is clearly defined in this indictment as having been committed with specific intent to kill. *State v. Watkins*, 27 Iowa, 415; *State v. McCormick*, 27 Iowa, 402; *State v. Dyer*, 147 Iowa, 217. See *Leonard v. Territory of Washington*, 2 Wash. T. 381 (7 Pac. 872) ; *State v. Phillips*, 118 Iowa, 660.

II. The crime is alleged to have been committed September 25, 1912, and the indictment was returned October 24th, following.   On the 14th of December, the defendant chal-

2. JURORS: disqualification: selection and return: statutes.

lenged the panel of petit jurors on the grounds: (1) That in three townships the judges of election did not certify to the return of petit jurors as required by law, and (2) that the election judges did not return the number of

electors to serve as jurors as apportioned by the county auditor. In order to understand the questions raised, it will be necessary to briefly refer to the statutes. Section 335 as amended by chapter 20 of the 33d General Assembly directs that the "list from which to select persons to serve as petit jurors for the two years commencing the first day of January next following shall be a number equal to one-tenth of the inhabitants of the county as shown by the last preceding official census." At the time of distributing the poll-books to the judges of election, the auditor is required to furnish them also a statement of the number of persons apportioned to their respective precincts to be returned for the petit jury list, and the judges are required to make the requisite selection and return lists of names so selected to the auditor with the returns of elections. "Such lists shall be composed only of persons competent and qualified to serve as jurors," and persons who have served as jurors since January 1st, preceding, are to be omitted, as are also the names of judges and clerks of election. "The members of the election board . . . when certifying to such lists shall state that the lists do not contain the name of any person who requests, directly or indirectly, that his name appear thereon and that it does not contain the name of anyone who served as judge or clerk of the general election of the year in which the list is prepared." Should the judge of election "fail to make and return such list as herein required, the board of supervisors shall, at a meeting held to canvass the votes polled in the county, make such lists for the delinquent precincts and the auditor shall file such lists in his office and cause a copy thereof to be recorded in the election book." Section 337-a, Code Supplement 1907, as amended by chapter 21 of Acts of 33d General Assembly.

The auditor and the clerk prepare the ballots containing the names of all persons so returned, and from these the jurors are drawn. Section 338, 342, Code. The lists from which the jury was drawn were prepared at the general election of

1910. The auditor certified that the lists should consist of the names of 3,026 persons from which to draw jurors. In many of the precincts fewer names were returned than apportioned, so that 2,328 names only were certified by the election judges. In three of the precincts, the election judges qualified by taking the oath prescribed by statute to perform their duties, and they and the clerks of election signed their names below the words, "A true return," following the computation of the votes cast for the several candidates. On each of the pollbooks, following the names of the petit jurors, appear the words: "We hereby certify that the list of names herein returned by us for jurors are correct, and that the said persons are competent and qualified to serve as jurors in accordance with section 337, Code of 1897, as we verily believe, and we further certify that said lists do not contain the names of any persons who requested directly or indirectly, that his name appear thereon or the name of any person who certified as a judge or clerk of this election." Below this was the word "attest," signed by a clerk, and the spaces left for the names of the judges of election, but no signatures. They did not forget, however, to certify to the compensation to which each was entitled. It will be noted that the only requirement for certification is that quoted, and the questions for our determination are whether the omission to return the number of names apportioned by the county auditor, or the failure to sign the certificate quoted in the three townships, was a material departure from the forms prescribed by law, for section 3679 of the Code provides that a challenge to the panel "can be founded only on a material departure from the forms prescribed by statute in respect to the drawing and return of the jury."

It will be observed that that statute assumes, rather than requires, that the jury lists will be certified by the election judges, and so they should be in the orderly discharge of duty by these officers. But the requirement is not specified in mandatory language, and there is no reason for thinking that

the Legislature intended, in defining the mode of selecting and returning jury lists, that the rule construing such statutes as directory should be modified. Though decisions may be found to the contrary, this court is committed to the doctrine that, in the absence of any showing of prejudice, substantial compliance with the statutes relating to the selection and returning of jury lists is all that is required.

In *State v. Brandt*, 41 Iowa, 593, but seventy-three names of persons to serve on the grand jury were returned, whereas the list should have contained seventy-five names, one township making no return, and two names were added by two of the supervisors neither of whom were drawn, and this was held not to justify setting the indictment aside, following *State v. Carney*, 20 Iowa, 82. In *State v. Ansaleme*, 15 Iowa, 44, jury lists were not certified and in two townships there was nothing to show which list was intended for grand jury and which for petit jury (the last in order being used for petit jury), and the court held the statutory provisions directory and approved of the action of the trial court in overruling the motion to set aside the indictment. In *State v. Pierce*, 90 Iowa, 506, the apportionment among the precincts was not entirely accurate, owing to changes in boundaries, and this was held not to be fatal to the indictment. This was on the ground that the statutes relating to the selection and return of jury lists are directory, and also that the court, being required to "examine the record, and, without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands," found the defects therein not to affect the substantial rights of defendant. This was also a ground of the ruling in *State v. Brandt, supra.* As noted in *State v. Hassan*, 149 Iowa, 518, the defendant has no vested right in any particular jury list. "Substantial compliance with the law with reference to appointing, selecting, and drawing grand jurors is all that is required." *State v. Edgerton*, 100 Iowa, 63. True, all these decisions relate to the selecting and return

of grand jury lists, but those for petit jurors are prepared
and returned by the same officers, in the same manner, and are
prescribed in the same statutes, differing only in respect to
the number of names, and the mode of selecting and return-
ing must also be regarded as directory. "An abundance of
authorities establish the proposition that a strict compliance
with the statutory provisions as to the time and mode of
making the selection is not necessary. Such provisions are in
general purely directory." Thompson & Merriam on Juries,
section 13.

It is very plain that, in exacting the large lists from
which to draw grand and petit jurors, the purpose was not to
protect any right of defendant or other litigants. · Qualified
jurors might readily have been drawn from a fraction of the
number listed. The primary object is to distribute the bur-
den of serving on the jury equitably among the inhabitants of
the county. *State v. Massey,* 2 Hill (S. C.) 379; *Sumrall v.
State,* 29 Miss. 202. In the last case, after stating the facts,
the court said:

If therefore the name of any person already returned be
omitted in the annual list, . . . or if the assessor should
wholly fail to return an annual list as required by law, it
will not vitiate the list of jurors, provided they are regularly
drawn from the box No. 1; because the persons so drawn have
been legally returned and enrolled as competent jurors, and
it is no objection to their competency that other persons who
should have been added to the list, in order that they might
bear their part of the burden of such service, have not been
regularly returned. The question is: Have those persons who
have been duly drawn from the box as jurors been duly re-
turned and entered as persons liable to such duty? And, if
this be answered in the affirmative, it would be absurd to say
that they were illegal jurors, except so far as the individuals
should be found deficient in the legal qualifications, to be tried
by the court when they should be impaneled as a jury. If this
view were not correct, the greatest inconvenience and confu-
sion might frequently occur by the errors or delinquency of
the returning officers, and the administration of justice be de-

layed or defeated by a narrow and literal interpretation of the statute in violation of its true spirit and intent. It would be to .apply a regulation which was merely intended to subject all persons in the county liable as jurors to the performance of that duty, and thus equalize the burden among the, people, in such a manner as to render illegal persons duly returned, drawn, and impaneled, and thereby to embarrass and defeat the very system intended to be established.

The defendant has not the right to be tried before any particular jury. All that he can demand is that his triers be legally qualified and be chosen from those designated in the manner prescribed by law to perform that service. *State v. Carter,* 144 Iowa, 371.

What was said by McClain, J., in *State v. Pell,* 140 Iowa, 655, concerning grand juries, is especially pertinent:

It is surely not competent to defeat the indictment by showing that some particular persons, whose names might properly have been considered in making up the grand jury list, were in fact not taken into account by the board in making such list. So long as no names are placed on the grand jury list which could not have been properly included, and no classes of persons are excluded to defendant's prejudice, there is at least a substantial compliance with the statute, and this is all that can be required.

That the names of persons qualified to serve as jurors were omitted from the jury list did not disqualify those who were returned, and there is no pretense that the names under the heading "for petit jurors" in the pollbooks not certified were not qualified jurors residing within these respective voting precincts. If any such were included, they were subject to challenge for cause. The election judges thereof solemnly swore that they would discharge their duties faithfully and impartially, and the presumption is that they did so, even though they did not expressly certify that they had done so. We think that, in the absence of any showing of fraud or of the inclusion of improper names in the list not expressly cer-

tified, but manifestly prepared by the proper officers, that such names were rightly recorded and included in the list from which to draw the panels for the jury service. That less than the number apportioned by the auditor was selected and returned from several townships did not disqualify those who were returned, and presumably, in the absence of proof to the contrary, the deficiency was owing to there being no more than those returned who were qualified. The election judges were required to omit all persons (1) not of good character, (2) not in the full possession of the sense of seeing and hearing (3) who could not speak and write the English language, (4) who had served as jurors within a year, (5) who were exempt from jury service, and (6) all who requested directly or indirectly to be selected. The court had no means of knowing how many remained after these deductions, and necessarily must have assumed that the return was of all those qualified to serve as jurors. *People v. Sowell,* 145 Cal. 292 (78 Pac. 717).

Not only was there no showing that any were included in the list who were not qualified, but it affirmatively appeared that none of the jurors who actually served resided in the township where the certificates were unsigned, and that every juror was actually qualified. A construction which would say that, under these circumstances, defendant was prejudiced by the irregularities mentioned, would be intolerable. The challenge of the panel was rightly overruled.

III. Exception is taken to the twenty-first instruction, which reads:

It is a general rule of law that voluntary drunkenness or intoxication is no defense or excuse for crime. But when a specific intent is necessary to constitute a crime, intoxication of the alleged perpetrator may be taken into account in determining whether he was capable of entertaining such intent; that is, if you find from the evidence that, at the time of the alleged shooting of deceased, the defendant was intoxicated. You are therefore instructed that if you find that defendant

at the time of the alleged shooting was intoxicated, and was so far intoxicated, or under the influence of intoxicating liquor, to such an extent, as to be incapable of willfulness, premeditation, or deliberation, or of having a specific intent to take the life of said Josephine Wilson, if he did take her life, then and in such case you would not be justified in finding him guilty of murder in the first degree.

This is said to be erroneous in that intoxication as a defense is limited to murder in the first degree, and no reference was therein made to included offenses. If anything is well settled in the law, it is that drunkenness is no defense for crime unless intent or knowledge is an essential element of the offense charged, and not then unless the accused was so drunk as to be incapable of entertaining the requisite intent or of possessing the requisite knowledge. Clark & Marshall on Crimes, section 107; *State v. Bell,* 29 Iowa, 316; *State v. Donovan,* 61 Iowa, 369; *State v. Conners,* 95 Iowa, 485; *State v. Dorland,* 103 Iowa, 168; *State v. Pasnau,* 118 Iowa, 501; *State v. Bennett,* 128 Iowa, 713.

3. CRIMINAL LAW: murder: intoxication as a defense: instruction.

At the common law, degrees of murder were not recognized, and a specific intent to kill was not essential. Any killing with malice, either express or implied, without justification or excuse, was murder, and voluntary intoxication, however excessive, did not constitute a defense, nor did it excuse or mitigate the offense. In *People v. Rogers,* 18 N. Y. 9, 14 (72 Am. Dec. 484), the English authorities are reviewed by Denio, J., so entertainingly that we quote:

We find it laid down as early as the reign of Edward VI (1548) that 'if a person that is drunk kills another, this shall be felony, and he shall be hanged for it; and yet he did it through ignorance, for when he was drunk he had no understanding nor memory; but inasmuch as that ignorance was occasioned by his own act and folly, and he might have avoided it, he shall not be privileged thereby.' Plowden, 19. The same doctrine is laid down by Coke in the Institutes, where he calls

a drunkard *voluntarius demon,* and declares that, 'whatever hurt or ill he doeth, his drunkenness did aggravate it.' 3 Thomas' Coke, 46. So in his Reports it is stated that 'although he who is drunk is for the time *non compos mentis,* yet his drunkenness does not extenuate his act or offense, nor turn to his avail; but it is a great offense in itself, and therefore aggravates his offense, and doth not derogate from the act which he did during that time; and that as well in cases touching his life, his lands, his goods, or any other thing that concerns him.' Beverley's Case, 4 Co. 125a. Lord Bacon, in his Maxims of the Law, dedicated to Queen Elizabeth, asserts the doctrine thus: 'If a mad man commit a felony, he shall not lose his life for it, because his infirmity came by the act of God; but if a drunken man commit a felony, he shall not be excused, because the imperfection came by his own default.' Rule V. And that great and human Judge, Sir Matthew Hale, in his History of the Pleas of the Crown, written nearly two hundred years ago, does not countenance any relaxation of the rule. 'The third kind of dementia,' he says, 'is that which is *dementia affectata,* namely, drunkenness. This vice doth deprive men of the use of reason, and puts many men into a perfect but temporary phrenzy; and therefore, according to some civilians, such a person committing homicide shall not be punished simply for the crime of homicide, but shall suffer for his drunkenness, answerable to the nature of the crime occasioned thereby, so that yet the primal cause of the punishment is rather the drunkenness than the crime committed in it; but by the laws of England such a person shall have no privilege by his voluntarily contracted madness, but shall have the same judgment as if he were in his right senses.' He states two exceptions to the rule, one where the intoxication is without fault on his part, as where it is caused by drugs administered by an unskillful physician, and the other, where indulgence in habits of intemperance has produced permanent mental disease which he calls 'fixed phrenzy.' 1 Hale, 32. Coming down to more modern times, we find the principle insisted upon by the enlightened Sir William Blackstone. 'The law of England,' he says, 'considering how easy it is to contract this excuse, and how weak an excuse it is (though real), will not suffer any man thus to privilege one crime by another.' 4 Com. 26. A few recent cases in the English courts will show the consistency with which the rule has been followed down to our own times.

The more recent decisions are then reviewed in confirmation of his statement.

The unexplained killing of a human being with a deadly weapon is presumed to have been with malice and is murder in the second degree under the statutes of this state, and the burden of proof is on the state to raise the offense to murder in the first degree. *State v. Hayden,* 131 Iowa, 1, 8. To accomplish this, deliberation and premeditation with a specific intention to kill must be established. This being shown, intoxication furnishes no defense, but it may be proven as bearing on whether the accused in fact acted with deliberation, premeditation, or intent to kill. If he were in such stupor that he was incapable of deliberation, premeditation, or of forming a specific design, it is manifest that he could not have been guilty of the offense of higher degree.

This principle is stated clearly in *Wilson v. State,* 60 N. J. Law, 171, 184 (37 Atl. 958) :

The true rule, in my judgment, to be deduced from a mass of authorities, is that there is a situation in which the fact of drunkenness is entitled to weight, not as an excuse for crime nor in extenuation of it, but as a fact tending to show that the crime imputed was not committed. When the character and extent of a crime is made by law to depend upon the state and condition of the defendant's mind at the time, and with reference to the act done, intoxication, as a circumstance affecting such state and condition of the mind, is a proper subject for inquiry and consideration by the jury. If, by law, deliberation and premeditation are essential elements of the crime, and, by reason of drunkenness or any other cause, it appears that the prisoner's mental state is such that he is incapable of such deliberation and premeditation, then the crime has not been committed; there is a failure on the part of the state to prove the crime into which premeditation must enter. Intoxication is a mere circumstance to be considered in determining whether premeditation was present or absent. As between the two offenses of murder in the second degree and manslaughter, voluntary intoxication cannot be a legitimate subject of inquiry. What constitutes murder in the second degree by a sober man

is equally murder in the second degree if committed by a drunken man.

The rule is thus stated in *Garner v. State,* 28 Fla. 113, 154 (9 South. 835, 845, 29 Am. St. Rep. 232):

Where a premeditated design to effect the death of the person killed or of some human being is essential to the offense of murder in the first degree, which it is in this state, drunkenness or intoxication, though voluntary, is relative evidence to be considered by the jury as affecting the capacity of the accused, at the time of the killing, to form a premeditated design to effect the death of the person killed or any human being. If a jury find from the evidence that the defendant was at the time of the killing so much intoxicated as to be incapable of forming a premeditated design, or of deliberating sufficiently to form such a design to take the life of the deceased or any human being (*Savage & James v. State,* 18 Fla. 909), and yet that, but for this incapacity, the defendant would be guilty in the first degree, they cannot find him guilty of murder in the first degree, because such premeditation is essential to the offense of murder in the first degree, as any other element of it.

If the accused, at the time of committing homicide, was so drunk as to be incapable of premeditation or of forming any deliberate intent, and there is no evidence of having premeditated the crime prior to becoming intoxicated, murder in the first degree is not made out; but, as said in *Aszman v. State,* 123 Ind. 347 (24 N. E. 123, 8 L. R. A. 33): "No degree of mental disturbance produced by voluntary intoxication will of itself, disconnected from sudden heat or other circumstances, avail to reduce the crime to a lower grade, unless such a diseased condition of mind has followed the habit of intoxication as to render the accused incapable of distinguishing between right and wrong, or of controlling his conduct when free from the influence of intoxicating drink." This was quoted with approval in *Gustavenson v. State,* 10 Wyo. 300 (68 Pac. 1006); the court adding: "Intoxication is a mere circumstance to be considered in determining whether

premeditation was present or absent. What constitutes murder in the second degree by a sober man is equally murder in the second degree if committed by a drunken man. . . . And this is so even when the intoxication is so extreme as to make a person unconscious of what he is doing or to create temporary insanity." *State v. Trapp,* 56 Or. 588 (109 Pac. 1094); *Evers v. State,* 31 Tex. Cr. R. 318 (20 S. W. 744, 18 L. R. A. 421, 37 Am. St. Rep. 811); *Jones v. Com.,* 75 Pa. 403; *State v. Robinson,* 20 W. Va., 713 (43 Am. Rep. 799); Bishop Crim. Law, section 409; Clark & Marshall, Crim. Law, section 108.

As pertinently observed in *Willis v. Com.,* 32 Grat. (Va.) 936: "Voluntary immediate drunkenness is not admissible to disprove malice, or to reduce the offense to manslaughter. But where, by reason of it, there is wanting that deliberation and premeditation which are necessary to elevate the offense to murder in the first degree, it is properly ranked as murder in the second degree." *State v. Cather,* 121 Iowa, 106, is not inconsistent herewith, for there the instruction was held erroneous, not for omitting reference to included offenses, but to those *involving a specific intent.* The language in *State v. Williams,* 122 Iowa, 115, is not as definite as it might have been; but the matter under consideration was whether the jury should have been instructed that intoxication, if such as to render the accused incapable of forming a specific intent to kill, would obviate conviction of murder in the first degree, and in saying that the jury should have been instructed "that his intoxicated condition, if shown, should also be considered by them as bearing upon the degrees of the offense," had reference to the degrees of murder, or to an included offense in which a specific intent was essential.

"Manslaughter" is not a degree of murder, but an included crime. *State v. White,* 45 Iowa, 325.

All held in *State v. Dorland,* 103 Iowa, 168, was that in-

toxication may be considered in determining whether the accused had formed the intent or purpose to help another in another's unlawful acts. Indeed, the case expressly recognizes the rule that, as bearing on the act of committing murder in the second degree or manslaughter, intoxication is not material. As neither the specific intent to kill nor premeditation and deliberation are essential to constitute murder in the second degree or manslaughter, the court did not err in omitting reference to these offenses in the instruction given.

IV. Instructions 21 and 22 requested, in so far as correct, were included in those given. The twenty-seventh instruction, refused, was to the effect that, if the defendant and his wife had previously had trouble at which 4. INSTRUCTIONS: refusal of requests. the defendant threatened her life, this might not be considered unless it appeared that ill feeling or malice, then engendered, still existed in the mind of the defendant at the time of the shooting in question.

Instruction 29½, given, properly guided the jury in considering this difficulty. It read: "It is proper for you to take into consideration as bearing on the question of malice and malice aforethought, or want of it, the 5. CRIMINAL LAW: evidence: instructions. testimony as to the alleged trouble between the defendant and deceased, also the evidence as to the alleged reconciliation between them." This submitted the entire question to the jury, and, of course, if the reconciliation had been complete, the threat would not have any bearing on the issue further than possibly disclosing the disposition of the parties. The claim that malice aforethought was not defined in any instruction is disposed of by paragraphs 9, 10, and 11, which very clearly indicate to the jury what was meant by the term. Instructions 8 and 9 were rightly refused. In so far as correct, they were included in those given.

Instruction 9, requested, assumed that there was no direct evidence of the offense. Several witnesses testified to

admissions by defendant indicating the manner in which de-
ceased lost her life, and defendant's connec-
tion therewith, and the rules with respect to
circumstantial evidence were correctly laid
down in the several instructions given. Instruction No. 9,
refused, was inaccurate in exacting that "each circumstance
essential to the conclusion of defendant's guilt should be
fully established in the same manner and to the same ex-
tent as if the whole issue rested upon it." The thought
seems to have been to exact proof of each circumstance
beyond a reasonable doubt when considered independent of
and apart from all other circumstances. Such is not the
law, as has been repeatedly decided by this court. A fact
or a circumstance, though it is not fully established when
considered alone, may derive such support from the con-
necting circumstances that it may be considered proven
beyond a reasonable doubt. *State v. Cohen,* 108 Iowa, 208.

Instruction 26 was properly refused, for that it
limited the consideration of the defendant's threat solely
to the establishment of malice aforethought.
It was proper to be considered in determin-
ing who was the aggressor in the shooting.

Moreover, it purported to specially instruct the jury, and
might well have been omitted on that ground.

V. One of the grounds of the motion for a new trial and
in arrest was that there was no evidence that death was in
consequence of the gunshot wounds inflicted.
Of course, such proof, if the fact was not
admitted, was essential. 21 Cyc. 874; Whar-
ton Crim. Ev., section 328; *Cole v. State,* 59 Ark. 50 (26 S.
W. 377).

But counsel for appellant in his opening statement to
the jury said they have "doctors to prove to you that a woman
was shot and killed. We know it. What do they need that
evidence for? We admit that the woman is dead, and that

those shots killed her. A fact is a hard thing to get away from." Having admitted that death was caused by the shots fired, there was no occasion to prove that death was so caused. It is elementary that admissions made in the course of judicial proceedings are substitutes for and dispense with actual proof of facts. *Commonwealth v. Desmond,* 5 Gray (Mass.) 80; *People v. Ross,* 115 Cal. 233 (46 Pac. 1059); *Godwin v. State,* 1 Boyce (Del.) 173 (74 Atl. 1101).

Such admissions are in the presence of the accused, and, if he interposes no objection thereto, are presumed to have been with his consent. *State v. Kinney,* 21 S. D. 390 (113 N. W. 77); *Godwin v. State, supra; People v. Garcia,* 25 Cal. 531.

The court might well have assumed the fact so admitted as proved. *Hill v. State,* 42 Neb. 503 (60 N. W. 916); *State v. Kinney, supra; State v. Ross, supra; State v. Archer,* 73 Iowa, 320; *State v. McKnight,* 119 Iowa, 79; *State v. Anderson,* 154 Iowa, 701. In thus disposing of the point raised, it is not to be assumed that we entertain any doubt as to the sufficiency of the circumstance proven to warrant the inference that death resulted from the wounds inflicted by the shots from the revolver.

We discover no error in the record, and the judgment is—*Affirmed.*

WEAVER, C. J., and EVANS and GAYNOR, JJ., concur. PRESTON, J., took no part.