STATE of Iowa, Appellee,

v.

Gary Wayne LOHR, Appellant.

No. 60994.

Supreme Court of Iowa.

May 17, 1978.

Boyle, Schuler & Stanton, Clear Lake, for appellant.

Richard C. Turner , Atty. Gen., Clayton L. Wornson, County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and REYNOLDSON, JJ.

RAWLINGS, Justice.

The question here posed is whether claimed noncompliance with statutorily prescribed procedure for drawing of the list from which defendant's trial jury was ultimately chosen negated his burglary conviction. We affirm.

The facts are not controverted. Defendant, Gary Wayne Lohr, was charged by information with a violation of Section 708.-1, The Code 1975. He pled not guilty. Prior to trial Lohr filed a written jury panel challenge based on alleged noncompliance with § 609.5 which, as amended by the 1976 Session of the Sixty-Sixth General Assembly, Ch. 1235, § 5, provides:

> "For the purpose of aiding the appointive commission in drawing the jury lists, officials of the state and its political subdivisions shall furnish the appointive commission with copies of the current list of registered voters, tax assessments lists, lists of persons holding motor vehicle operators' licenses, or such other comprehensive lists of persons residing in the county as the commission may request. The clerk of the district court shall also deliver to the commission a list of all persons who have served as grand or petit jurors since January first of the preceding year."

Before amendment § 609.5 required the furnishing of only "election registers of the last preceding general election" and a list of those who served as jurors during the prior year.

The presently involved jury commission was provided with just two lists: registered voters and previously called jurors. Commission members, by supplementing these with their own knowledge, selected some prospective jurors not found on the registered voter list.

Trial court overruled Lohr's challenge and in so doing said:

> "There is no provision in the Code which requires that the jury commission use any particular list.
>
> "It is the further conclusion of the Court that the thirty-seven hundred jury names selected has resulted in fair and impartial jury panel during 1977. The

Court further concludes that there has been no systematic exclusion of qualified persons to serve on the petit jury."

The case thereupon proceeded to trial. After conviction and sentencing, defendant initiated this appeal.

■ I. Extensive detailed procedures, from drawing of juror lists to summoning individuals for jury duty, are provided in Code Ch. 609. And Iowa R.Civ.P. 187(d), made applicable to criminal prosecutions by § 779.3, *State v. Jones,* 193 N.W.2d 509, 512 (Iowa 1972), requires panel challenges be based "only on a material departure from the statutory requirements for drawing or returning the jury." See *State v. Sallis,* 262 N.W.2d 240, 245 (Iowa 1978), quoting *State v. Staker,* 220 N.W.2d 613, 615–616 (Iowa 1974).

Lohr contends a material departure from § 609.5 occurred when two of the three enumerated lists were not furnished the jury commission. He supportively argues the duty to furnish the omitted lists is made mandatory, rather than permissive or directory, by use of the word "shall".

State takes a different approach. It asserts there exists no duty to furnish any list until it is requested by the commission. This assertion rests on this portion of § 609.5: "or such other comprehensive lists of persons residing in the county as the commission may request." Since Lohr presented no evidence of any commission request for lists not supplied, the State claims no duty, mandatory or otherwise, was instantly disregarded. It also posits the commission has no statutory duty to draw from any particular list.

■ II. At the outset it is apparent State's position overlooks a well settled rule of statutory construction: The Doctrine of Last Antecedent. State maintains the phrase "as the commission may request" refers to the enumerated lists as well as the catchall phrase "such other comprehensive lists", and thereby qualifies the duty to furnish any list. Normally, however, referential, relative, or qualifying words and phrases refer only to the immediately pre-

ceding antecedent. See *F.T.C. v. Mandel Brothers, Inc.,* 359 U.S. 385, 389, 79 S.Ct. 818, 822, 3 L.Ed.2d 893 (1959); *Raybestos-Manhattan, Inc. v. Glaser,* 144 N.J.Super. 152, 365 A.2d 1, 9 (Ch.Div.1976); *Sullivan v. Dixon,* 280 Md. 444, 373 A.2d 1245, 1249 (1977); *Salt Lake City v. Salt Lake Cty.,* Utah, 568 P.2d 738, 740–741 (1977); 2A Sutherland, Statutory Construction, § 47.33 (4th ed. 1973); 73 Am.Jur.2d, Statutes, §§ 229 et seq.; 82 C.J.S. Statutes § 334; cf. *Holland v. State of Iowa,* 253 Iowa 1006, 1010–1011, 115 N.W.2d 161, 163–164 (1962).

Noticeably, this is due to both grammatical considerations and legal pronouncements. *United States v. Pritchett,* 152 U.S. App.D.C. 307, 470 F.2d 455, 459 n.9 (1972); *T. I. McCormack Trucking Co. v. United States,* 251 F.Supp. 526, 531–536 (D.N.J. 1966); *Winokur v. Michigan State Board of Dentistry,* 366 Mich. 261, 114 N.W.2d 233, 235 (1962); *Schneider v. Forcier,* 67 Wash.2d 161, 406 P.2d 935, 937 (1965).

For example, the relevant statute in *Sullivan* provided:

"[A] professional corporation may invest its funds in real estate, mortgages, stocks, bonds, or any other type of investment, and may own real or personal property *necessary for the performance of a professional service.*" 373 A.2d at 1249. (emphasis supplied).

The Maryland court held the italicized language modified only the phrase "may own real or personal property". *Id.* Deemed particularly significant was absence of a comma immediately after "property". Faced with a similar statutory situation the New Jersey court in *Glaser* noted: "Had the modifying phrase been intended to relate to more than its last antecedent, a comma could have been used to set off the modifier from the entire series." 365 A.2d at 11, quoting *N. J. Ins. Underwriting Ass'n v. Clifford,* 112 N.J.Super. 195, 204, 270 A.2d 723, 727 (App.Div.1970). Accord, *Pritchett,* 470 F.2d at 459; *McCormack,* 251 F.Supp. at 531, 533; *Schneider,* 406 P.2d at 937; Sutherland, § 47.33 at 15 (Supp.1977); 73 Am.Jur.2d, § 231 at 415; 82 C.J.S. § 334 at p. 672.

██ Admittedly, punctuation is seldom a highly persuasive factor in statutory construction and will not defeat evident legislative intent. *State v. Guardsmark, Inc.*, 190 N.W.2d 397, 400 (Iowa 1971); Sutherland, § 47.15. Several courts, while recognizing the Last Antecedent Doctrine and noting absence of appropriate punctuation, have construed several modifying words as referring to all preceding antecedents. E. g., *United States v. Bass*, 404 U.S. 336, 339–341, 92 S.Ct. 515, 518–519, 30 L.Ed.2d 488 (1971); *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S.Ct. 516, 518, 64 L.Ed. 944 (1920); *United States v. Standard Brewery*, 251 U.S. 210, 218, 40 S.Ct. 139, 140–141, 64 L.Ed. 229 (1920); *Bd. of Trustees, etc. v. Illinois Dept. of Ins.*, 42 Ill.App.3d 155, 1 Ill.Dec. 171, 356 N.E.2d 171, 174 (1976); *Commonwealth v. Rosenbloom Finance Corp.*, 457 Pa. 496, 325 A.2d 907, 909–910 (1974); *Salt Lake City v. Salt Lake Cty.*, 568 P.2d at 741. In most if not all of these cases, however, extrinsic construction aids clearly demonstrated extension of the modifier to several antecedents was legislatively intended.

██ Application of the aforesaid doctrine leads to the conclusion that "as the commission may request" refers to and qualifies only the duty to furnish "such other comprehensive lists of persons residing in the county". Practically speaking, this is not a case in which the modifier relates to earlier antecedents as readily as to the last. The duty to furnish an *un*enumerated list is necessarily conditioned on a specific request, but there is no similar need to so condition the duty to furnish a list sufficiently described by statute. As heretofore demonstrated, had the legislature intended to qualify the duty to furnish enumerated lists, a comma after "county" would have been inserted. So the question now to be resolved is whether such literal construction flies in the face of manifest legislative intent. We are satisfied it does not do so.

III. On this point, case law in Iowa and elsewhere strongly suggests § 609.5's amendment was intended to require utilization of several and varied sources in compiling prospective juror lists—a goal more readily attained if the duty imposed is not conditioned upon a specific commission request.

██ Illustratively, it is now well settled that juror drawing from a representative cross section of the community is constitutionally required. *Taylor v. Louisiana*, 419 U.S. 522, 526–531, 538, 95 S.Ct. 692, 696–698, 702, 42 L.Ed.2d 690 (1975); *State v. Brewer*, 247 N.W.2d 205, 209 (Iowa 1976). In like vein, systematic exclusion of an identifiable eligible segment of society, which prevents a jury from being representative of the community, violates an accused's constitutional right to an impartial jury. *Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972); *Brewer*, 247 N.W.2d at 209.

██ On the other hand, states remain free to prescribe their own juror drawing procedures and retain broad discretion in formulating such plans. *Taylor*, 419 U.S. at 537–538, 95 S.Ct. at 701; *Brewer*, 247 N.W.2d at 209–210; *State v. Williams*, 243 N.W.2d 658, 662 (Iowa 1976). All affirmatively required by the Sixth Amendment is a system likely to result in representative jury panels. *Taylor*, 419 U.S. at 529 n.8, 95 S.Ct. at 697, quoting *Rabinowitz v. United States*, 366 F.2d 34, 57 (5th Cir. 1966); *Cobbs v. Robinson*, 528 F.2d 1331, 1335 n.2 (2d Cir. 1975), cert. denied, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976).

Consequently, constitutional attacks on drawing procedures, characterizing the pools or sources from which juror lists are compiled as too restrictive, have been relatively futile. See, e. g., *Brown v. Allen*, 344 U.S. 443, 472–474, 73 S.Ct. 397, 415–416, 97 L.Ed. 469 (1953); *Cobbs v. Robinson*, 528 F.2d at 1335–1337; *United States v. Geelan*, 509 F.2d 737, 739–741 (8th Cir. 1974), cert. denied, 421 U.S. 999, 95 S.Ct. 2395 and 2396, 44 L.Ed.2d 666 (1975); *Hallman v. United States*, 490 F.2d 1088, 1092 (8th Cir. 1973); *Wright v. Smith*, 474 F.2d 349, 353 (5th Cir.), cert. denied, 414 U.S. 853, 94 S.Ct. 149, 38 L.Ed.2d 102 (1973); *United States v. Lewis*, 472 F.2d 252, 255–257 (3d Cir. 1973); *Hampton v. State*, 569 P.2d 138, 148–149

(Alaska 1977); *People v. Sirhan,* 7 Cal.3d 710, 102 Cal.Rptr. 385, 412, 497 P.2d 1121, 1148 (1972), cert. denied, 410 U.S. 947, 93 S.Ct. 1382, 35 L.Ed.2d 613 (1973); *State v. Sheppard,* 350 So.2d 615, 650–651 (La.1977); *Wilkins v. State,* 270 Md. 62, 310 A.2d 39 (1973). Specifically, *State v. Williams,* 243 N.W.2d at 662, holds the compilation of juror lists solely from voter registration print-outs was not unconstitutional and Lohr no longer contends otherwise. See also *State v. Knutson,* 220 N.W.2d 575, 577 (Iowa 1974).

■ Nevertheless, there exists a clear constitutional mandate to secure prospective jurors from as representative a source as is feasible. Reliance solely on voter registration lists has obvious drawbacks. Many persons otherwise qualified to be jurors [1] are not registered to vote. This remains particularly true of minorities and economically disadvantaged persons.

■ In light of the foregoing it appears the legislature, by amending § 609.5, intended to advance Iowa's juror drawing procedure beyond the minimum constitutionally commanded. Obviously, construing § 609.5 to provide an unconditional duty to furnish jury commissions certain lists will enhance this legislative goal. At any rate, there appears no reason to conclude that today's legal and grammatical construction of the statute is inconsistent with legislative intent.

IV. However, the foregoing conclusion is not alone instantly dispositive. Having found existence of an unqualified duty, we must now determine whether neglect thereof will in turn vitiate Lohr's conviction.

Defendant contends legislative use of the word "shall" in § 609.5 is conclusive because it is mandatory as opposed to permissive. But he confuses two admittedly similar legal concepts: the obligatory-permissive and mandatory-directory distinctions. This statement from *Taylor v. Department of Transp.,* 260 N.W.2d 521, 523 (Iowa 1977), is particularly explicative of the difference between the two:

"The mandatory-directory dichotomy does not refer to whether a statutory duty is obligatory or permissive but instead relates to whether the failure to perform an admitted duty will have the effect of invalidating the governmental action which the requirement affects."

Supportively cited is *Morris v. County of Marin,* 18 Cal.3d 901, 136 Cal.Rptr. 251, 255–256, 559 P.2d 606, 610–611 (1977).

■ Understandably, § 609.5 is obligatory, thus excluding the idea of discretion. In that regard use of the word "shall" is ordinarily persuasive evidence. E. g., *Schmidt v. Abbott,* 261 Iowa 886, 889–890, 156 N.W.2d 649, 650–651 (1968); Code § 4.1(36)(a). But here we must decide whether the statute is mandatory or directory; i. e., should failure to perform the established duty have been remedied by sustaining Lohr's jury panel challenge? On this issue "shall" assumes no special significance. Rather, as *Taylor* explains, 260 N.W.2d at 522–523, the inquiry focuses on nature of the duty rather than its phraseology:

"If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it. If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown."

■ So we look to the basic purposes which attend the juror drawing process. First, as heretofore noted, the Constitution requires that prospective jurors be drawn from a representative cross section of the community, at the same time prohibiting systematic exclusion of any identifiable eligible group. Iowa's present statutory system seeks to discharge this dual obligation-

---

1. Any eligible voter, whether or not registered, who meets the individual requirements of § 607.1, is competent to be a juror in Iowa.

See §§ 609.1, 609.7 and 39.3; *State v. Williams,* 243 N.W.2d at 661.

prohibition mandate. Next a separate but related objective is to equitably distribute jury duty among inhabitants of a county. *State v. Wilson,* 166 Iowa 309, 316, 144 N.W. 47, 50 (1913).

Observance of neither basic purpose requires that a penal challenge grounded on failure to supply the jury commission with two of three specified lists be upheld. As previously observed, exclusive reliance on voter registrations, although not the best solution, does not alone offend the Sixth Amendment. And the acknowledged slighting of our legislature's attempt to further spread jury duty among the citizenry does not give added vitality to Lohr's pretrial challenge. Simply stated, the § 609.5 list furnishing duty furthers but is not essential to the main statutory objectives.

Noticeably, our presently stated views accord with prior opinions by this court which construe as directory various portions of Iowa's juror drawing plan. These cases also hold Rule 187(d)'s "material departure" language requires, absent demonstrated prejudice, no more than substantial compliance with our juror drawing provisions. See *State v. Williams,* 264 N.W.2d 779 (Iowa 1978); *State v. Dohrn,* 259 N.W.2d 801, 804 (Iowa 1977), and citations; *State v. Williams,* 243 N.W.2d at 661; *State v. Walker,* 192 Iowa 823, 826–827, 185 N.W. 619, 621–622 (1921); *State v. Wilson,* 166 Iowa at 314–318, 144 N.W. at 49–51.

It therefore follows Lohr's jury panel challenge, unaccompanied by any showing of prejudice, was properly overruled and his conviction must stand.

This does not mean failure to fully respect newly imposed Code § 609.5 requirements is of little or no consequence. The involved legislation is to be accorded due deference.

AFFIRMED.