THE STATE v. ALBERT L. RIPPY.

*Insanity—Homicide—Judge's Charge.*

When upon the trial of an indictment for murder, the defendant relied
   upon insanity as a defence, and produced testimony tending to
   show that he was laboring, at the time, under an attack of
   *delirium tremens*; that he was also under the influence of over-
   doses of morphine, which were calculated to produce frenzy, and
   that insanity was hereditary in his family: *Held*, that an instruc-
   tion to the jury which omitted to present distinctly the effect of
   the alleged frenzy, resulting from the overdose of morphine—
   especially when the prisoner had asked a special instruction on
   that point—was erroneous, and was not cured by a general charge
   that "insanity was a complete defence to all criminal acts while
   under its influence, whether permanent or temporary, and from
   whatever cause produced."

This was an Indictment for Murder, tried before *Bynum*,
*J.*, at the March Term, 1889, of ALAMANCE Superior Court.
The defendant was indicted for the murder of Abel Rippy.
He plead "not guilty," admitted the killing, and relied upon
the defence of insanity.

Only so much of the testimony and the ruling of his
Honor are here stated as is necessary to the understanding
of the points passed upon by this Court.

It was in evidence that the prisoner shot his father with
a gun just before "sundown" on Friday, the 1st day of
October, 1888. The homicide was committed at some hay-
stacks, near the dwelling-house of the deceased. A witness
for the State, a brother of the prisoner, testified that the
prisoner was about thirty-five years of age; that "he stayed
in the house of the deceased some of the time, but generally
stayed in a cabin on the premises, some five hundred yards
away from the scene of the homicide, with a crippled brother,
named Benjamin Rippy; that he had seen prisoner almost
every day for eighteen months preceding the homicide, and

had not, in that time, seen him sober; that prisoner had been away a day or two, and had returned to the cabin of his brother, a while after dinner, on the day of the homicide, and then stated the circumstances under which the killing was done, showing that it was unprovoked by the deceased. He stated that prisoner had a brother and sister who were crazy, and that he was drunk at the time.

The defendant introduced Benjamin Rippy, the crippled brother who occupied the cabin, who testified that defendant had stayed with him most of the time in the cabin; that he had been two days and three nights away, and came back two or three hours by sun on the day of the homicide, and "had no sense; sat flat down on the ground, in the yard, his eyes just dancing; I said to him, 'you're got no sense;' told him to come in the house; he said, 'I feel bad'; I asked him what was the matter—he didn't say anything; I had morphine—have been afflicted with rheumatism for ten years, and take it to ease pain; I had given it to defendant before and it put him to sleep; I told him better have medicine, and gave him some (showing how much); he lay down on bed ten or fifteen minutes and got up; I gave him more morphine (showing how much); I gave it to him because he had no sense, and I thought it would make him go to sleep; he went off; I didn't see what he carried, because I can't turn my head; I heard a gun; defendant came back."

Several witnesses testified that, in their opinion, the prisoner was insane at the time of the homicide. They described his appearance and conduct in detail. There was also evidence that several of prisoner's ancestors had been insane.

Dr. G. W. Long was introduced for the defence, and, having qualified himself as an expert, said that he had heard the testimony of all the witnesses in the case; that he noted the testimony of Benjamin Rippy as to the quantity of mor-

104—48

phine he gave defendant a few hours before the homicide; that the quantity as indicated by said Benjamin was an overdose, and its effect would be to produce wildness and insanity until the person should give in and sleep should intervene, and the longer sleep was deferred the more pronounced and excessive the wildness and insanity would become. This witness also testified to the effect of excessive use of alcohol on the brain, and that it was calculated to produce insanity; that sometimes such insanity was temporary, and known as *mania potu*, or delirum tremens, and sometimes it became permanent; that hereditary insanity is recognized in medical science, and that a person whose blood was tainted with insanity would be more liable to become insane from the excessive use of intoxicants or from an overdose of morphine.

Dr. W. G. Stafford was introduced for the defence, and, having qualified himself as an expert, testified that he had been present and had heard and gave particular attention to all the testimony in this case. This witness also testified as to the effects of long and excessive use of alcohol upon the brain, and also of the effects of morphine when given in an overdose, and said that the quantity testified to by Benjamin Rippy was excessive and would produce insanity unless sleep very soon intervened.

There was testimony upon the part of the State tending to show the sanity of the prisoner.

Several instructions on the question of insanity were asked of the Court—

"6. That if the jury shall believe that the prisoner, at the time of the homicide, was in a state of mind that rendered him incapable of comprehending the criminal character of his act, and that his incapacity was the result of an overdose of a drug he had taken, then they should acquit.

"7. That if the jury believe the prisoner subject to a tendency to insanity, and that, because thereof, extraordinary

effects resulted from intoxication, of which he was ignorant, and that he was thereby rendered incapable of comprehending the criminal character of the act, they should acquit.

"8. That if the prisoner, at the time of committing the homicidal act, was suffering from *delirium tremens*, although occasioned wholly by strong drink, he should be acquitted."

His Honor refused to instruct the jury as requested, and instructed and charged as follows:

"Every man is presumed to be sane and to possess a sufficient degree of reason to be responsible, criminally, until the contrary is proven to the satisfaction of the jury; and, to establish a defence on the ground of insanity, it must be proven to the satisfaction of the jury that, at the time of committing the act, the defendant was laboring under such a defect of reason from disease of mind as not to know the nature of the act he was doing, or, if he did know it, that he didn't know what he was doing was wrong. Voluntary drunkenness is no excuse for crime. The law recognizes the existence of a form of diseased mind known as *delirium tremens*, produced by excessive use of stimulating drink, and if the jury are satisfied that the defendant was so far insane as not to know the nature of the act he committed at the time he committed it, nor whether it was right or wrong, he would not be guilty, although such insanity be *delirium tremens*, and produced by the voluntary use of intoxicating liquor. Insanity is a complete defence to all criminal acts committed while under its influence, whether such insanity be permanent or temporary, and from whatever cause produced."

The prisoner excepted. There was a verdict of guilty, and judgment, and the prisoner appealed.

*The Attorney General,* for the State.
*Mr. June Parker,* for the defendant.

SHEPHERD, J.—after stating facts: The testimony in this case presented several phases of defence, each of which should have been clearly and distinctly stated to the jury with proper explanations. *State* v. *Mathews*, 78 N. C., 537.

There was testimony tending to show hereditary insanity; permanent insanity produced by long and continued use of alcoholic spirits, *delirium tremens*, and temporary insanity or frenzy caused by an overdose of morphine administered as a medicine.

The charge of his Honor on the question of insanity was very general, the only one of the above theories of defence mentioned therein being that of *delirium tremens*.

We think that the instructions should have given equal prominence to all of the theories of defence legitimately arising on the testimony, and that although the latter part of the charge was sufficiently comprehensive to embrace every view, it may not be unreasonable to infer that the deliberations of the jury were, in a measure, confined to the particular phase of defence mentioned by his Honor.

But however this may be, we are clearly of the opinion that there was error in the refusal of the Court to give the sixth instruction prayed for by the prisoner. This instruction was as follows: "That if the jury shall believe that the prisoner, at the time of the homicide, was in a state of mind that rendered him incapable of comprehending the criminal character of his act, and that his incapacity was the result of an overdose of a drug he had taken, then they should acquit."

If the homicide was committed while the prisoner was in a frenzy, produced by an overdose of morphine administered to him as medicine under the circumstances detailed by his brother, it would be a complete defence. 1 Rus. Crimes, 12; 1 Hale P. C., 32; 3 Greenleaf Ev., Sec. 6; *Rogers* v. *State*, 33 Ind., 543.

Notwithstanding the special prayer for instructions upon this point, which was so fully presented by the testimony, and which was of such vital importance to the prisoner, the Court failed to specially instruct upon any other theory of defence than that of *delirium tremens,* leaving the other theories to be considered under a general instruction, which was as follows : "Insanity is a complete defence to all criminal acts committed while under its influence, whether such insanity be permanent or temporary, and from whatever cause produced."

The substitution of a general proposition of law, however correct it may be, for particular instructions asked, has been condemned by this Court. *State* v. *Dunlop,* 65 N. C., 293; *State* v. *Mathews,* 78 N. C., 537.

In the latter case, Judge RODMAN, in delivering the opinion of the Court, says: "We think a Judge is required, in the interest of human life and liberty, to state clearly the particular issues arising on the evidence, and on which the jury are to pass, and instruct them as to the law applicable to every state of the fact, which, upon the evidence, they may reasonably find to be the true one." *Nelson* v. *State,* Swan, Tenn., 237.

As we are of the opinion, for the reasons given, that a new trial should be granted, it is unnecessary to consider the other exceptions which were argued by the intelligent young counsel who appeared for the prisoner.

Error.