### CLARENCE EDWARDS v. THE STATE.

#### No. 1701.  Decided December 1, 1897.

**1.  Assault with Intent to Murder—Insanity—Cocaine and Morphine.**

Our statute relating to insanity produced by the recent use of intoxicating liquors does not prescribe a rule for insanity produced by cocaine or morphine. It a party is rendered insane by the voluntary recent use of cocaine and morphine to the extent that he did not understand the nature and quality of the act he was doing and was incapable of forming the intent, he could not be guilty of an assault with intent to murder.

**2.  Same—Recent Use of Intoxicating Liquor and Other Causes.**

It is a correct legal principle, that where there is insanity, produced by other causes in conjunction with the recent use of intoxicating liquor, an act, done in such a state of mind can not be attributed solely to the recent use of intoxicating liquors.

APPEAL from the District Court of Harrison. Tried below before Hon. W. J. GRAHAM.

Appeal from a conviction for assault with intent to murder; penalty, three years imprisonment in the penitentiary.

*Pope & Lane* and *Webster Blocker*, for appellant.—Two questions are presented on this appeal: 1. Does insanity produced by the use of cocaine and morphine stand upon the same plane as insanity produced by drunkenness? 2. Does a person who becomes addicted to the use of these drugs to alleviate physical suffering stand in the same category as one who forms the vicious habit without any apparent cause?

We labor under the difficulty of having no authority where a case like the one at bar has ever been before the courts. The case of Wilcox v. State, 28 Southwestern Reporter, 312, cited by the district attorney in his brief, is the only case that we have been able to find where a defense such as is made by this appellant has been offered. That case is not in point, because there the defendant relied upon uncontrollable impulse and delusion. There was no testimony that he was under the influence of drugs at the time, but only that he had been addicted to the use for years. He had formed the habit, so far as the case goes to show, upon his own responsibility, and not for the purpose of allaying physical suffering. Insanity produced from the use of these drugs, which use arose for the purpose of allaying physical suffering, should not be placed upon the same plane as insanity produced from the use of alcoholic stimulants, for two reasons: First, it is not so named in the statute; and second, because it is not in harmony with reason. The reason why the law declares drunkenness, even though it reaches the stage of insanity, no ex-

cuse for crime, is because from time immemorial the drinking of intoxicating liquors has been a social vice or custom, from which crimes of homicidal and assault nature have flowed in great numbers; and to have permitted a person charged with crime to plead this as an excuse, would have opened up the floodgates and permitted numberless criminals to escape. Men drink whisky to be social; to cheer drooping spirits; to drown sorrow, and to enable them to better rejoice when they have occasion to rejoice. Men take drugs either to allay human suffering or. they become addicted to the habit by having it prescribed by physicians for a temporary purpose. Again, the effect of the two are entirely different. Not one man in a thousand who takes cocaine and morphine is influenced thereby to commit crime of a homicidal nature, but with whisky, not one in a thousand who gets drunk upon it but is influenced to do violence to his fellow man.

The brief of the district attorney filed in this case does not present the facts as they appear in the record. He says the defendant and the injured party were talking at the time of the assault. The testimony of the injured pary, who was standing within arm's reach, says that not a word was passed. While the witness Adams says they appeared to be talking, yet he was standing nearly fifty feet away, and could not have known better than the injured party, who was standing face to face with appellant.

The district judge should have given special instructions number 1, asked by appellant, as follows: "The defendant asks the court to charge the jury that if they believe from the evidence that the defendant committed the asssault on Walker Tyler, still, if they further believe that the defendant was in such a condition of mind, not produced by the immediate effects of intoxicating drink, but produced by the continued and excessive use of intoxicating liquors as not to have been conscious of what he was doing, then you should find the defendant not guilty."

See Ward v. State, 19 Texas Criminal Appeals, 689. The special instruction asked by appellant is in the very language of a special charge asked and refused in that case, and which this court held should have been given. The testimony shows that the defendant had been at home for four days on a protracted debauch, with a nurse in attendance, and during that time he had at least one attack of delirium or insanity, and assaulted his nurse. He had also been during the same time not only drinking whisky in large quantities, but had been indulging in the use of cocaine and morphine. In view of this testimony, special instruction number 1 was pertinent to his defense.

*John B. Carter,* District Attorney Fourth Judicial District, for the State.—The following facts were shown upon the trial of the cause:

On December 25, 1896, appellant, in company with the injured party, Walker Tyler, walked out of a saloon, across the sidewalk, stopping near the curbing with his left hand holding to an awning post, with right hand in overcoat pocket. Tyler and he seemed to be talking, and were nearly facing each other. Appellant jerked his hand from his pocket with an

open knife in it and stabbed Tyler in the left breast, just above the heart, puncturing the lung; the knife seemed to have been driven to the hilt; the blade of the knife was about four inches long. The only remark that appellant made preceding the cutting was, "Go way, and let me alone," and immediately following the cutting assigns as a reason for cutting Tyler that he had been bothering him all the morning trying to get him (appellant) to go home.

The only defense interposed was, that at the time of the cutting appellant did not have mental capacity enough to understand the nature and illegality of the act charged, and that this condition was brought on by the recent use of cocaine, morphine and whisky. Three witnesses, John Turner, E. J. Field, and Jane Wells, testified, from their observation of the defendant at the time, or just after the assault, that in their opinion he did not have sufficient mental capacity to understand the difference between right and wrong.

Dr. John H. Pope, testifying as an expert, stated, upon the hypothetical question put, that defendant did not have mental capacity sufficient to understand the nature and illegality of the act charged. To rebut this proof the State introduced Walker Tyler and Tom Tyler, who were with appellant some hours prior to the assault; A. G. Adams, who was present at the time of the assault; George W. Munden, who saw defendant some little time after the assault; Walter Munden, who also saw him afterwards; Dr. E. A. McMahon, a physician, who treated appellant ten or fifteen days after the assault for alcoholism. All of these witnesses agree substantially that at the time of the commission of the offense the appellant had mental capacity sufficient to understand the nature and illegality of the act, and also the difference between right and wrong.

Considering the nature of the defense, the testimony of the defendant is very remarkable. He recollected everything that he did that day with the greatest particularity, with the exception of the very act of stabbing Walker Tyler. Upon his testimony arises the defense of temporary insanity produced by the use of cocaine, morphine, and whisky, and his testimony further shows that he understood the effect of cocaine and morphine upon the nervous system, and that so knowing he voluntarily took said drugs.

Appellant assigns the following errors:

1. The court erred in its general charge to the jury in holding that insanity produced by the use of the drugs cocaine and morphine would not excuse the defendant.

2. The court erred in refusing to give to the jury the special instructions marked special charges numbers 1-5, as requested by defendant's counsel.

Temporary insanity produced by the recent voluntary use of the drugs cocaine and morphine is no defense to crime, but such temporary insanity may be considered by the jury in mitigation of the punishment to be assessed for the act committed. Wilcox v. State (Sup. Ct. Tenn.), 28 S. W. Rep., 312.

The evidence showed that while appellant had been addicted to the use of morphine for about ten years, and addicted to the use of cocaine for about eighteen months, and of intemperate habits with reference to intoxicating liquors for a long time, still he was not an insane person from the use of these drugs all the time, and the strongest that the evidence could possibly be put is that he was temporarily insane while under the active influence of the drugs.

Upon the phase of settled insanity produced by drugs, or intoxicating liquors, the court charged the jury as follows: "If, however, the defendant, prior to that time, had been affected with disease, or bodily suffering, and to cure the disease or allay the suffering he had contracted the use of cocaine and morphine, or intoxicating liquors, and by reason thereof his mind had become and was at the time of the commission of the act charged against him diseased to the extent that he had lost control of his mind, and did not know what he was doing, or if he did know what he was doing, if he did not have mind sufficient to distinguish between right and wrong, as to the particular act charged against him, then his condition of mind was such as the law would excuse him for any act done in such state of mind so produced."

1. The excessive recent use of intoxicating liquors producing temporary insanity will not reduce an assault with intent to murder to an aggravated assault.

2. The habitual use of morphine and cocaine, or either of them, and the recent use of intoxicating liquors combined, producing temporary insanity, will not reduce an assault with intent to murder to an aggravated assault. Penal Code, art. 41, and notes 1-4; Wills. Crim. Stats., 4 ed.; Wilcox v. State, 28 S. W. Rep., 312.

Special charges 3 and 4 requested by defendant are substantially, that if the use of cocaine, morphine, and intoxicating liquors, or either of them, produced in the appellant such a state of mind as to render him incapable of forming an intent to commit an assault with intent to murder, and the assault was committed with a deadly weapon, then you will find him guilty of an aggravated assault.

The court charged the jury, emphatically, that if the assault was not made with the intent to take the life of Walker Tyler, then you will convict him of an aggravated assault. And also charged the jury: "You are instructed that the insanity referred to, and which will excuse a party for an act which otherwise would be a crime, is not that which a person voluntarily and knowingly brings upon himself. If the defendant by the voluntary and recent use of cocaine and morphine, or intoxicating liquors, or all of them, put himself in a condition that he was incapable of distinguishing between right and wrong as to the particular act charged against him, and he voluntarily took said cocaine and morphine, or intoxicating liquors, knowing that it would produce such state of mind in him, then, although at the time of the commission of the act he might not have known what he was doing, or was incapable of distinguishing between right and wrong as to the particular act charged against him he

would not be excusable for the act if the act was otherwise criminal. If the normal condition of the defendant was that of a sane person, and his mind was not diseased, but was only temporarily dethroned by the recent use of said medicines or intoxicating liquors, or all of them, and the defendant voluntarily took them, knowing at the time when he did so that it would dethrone his mind, then no state of insanity so produced would be a defense to crime."

In another part of the charge the jury are further told, "Was laboring under temporary insanity as above defined, produced by the voluntary recent use of ardent spirits, or by voluntary recent use of cocaine and morphine, you will take such temporary insanity into consideration in mitigation of the penalty attached to the offense of which you find him guilty."

No stage of insanity produced by the voluntary recent use of cocaine, morphine, or intoxicating liquors, either or all combined, will excuse one for the commission of crime. Wills. Crim. Stats., 4 ed., and art. 41, and notes thereunder; Wilcox v. State, 28 S. W. Rep., 312; United States v. Drew, 5 Mass., 28; 4 Black. Com., pp. 25, 26; 1 Hale, P. C., p. 30.

*Mann Trice*, Assistant Attorney-General, also for the State.

HENDERSON, JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at three years in the penitentiary; hence this appeal.

Appellant's principal defense was insanity. He offered testimony tending to show that at the time of the alleged offense he was insane. The evidence shows that for a considerable length of time—perhaps several years—he had been addicted to the use of morphine, and for the last eighteen months to the use of cocaine; and he was also addicted to the use of whisky. Some three or four days prior to the assault he had been confined to his home under the attention of a physician; had been taking morphine and cocaine, and also drinking whisky. On the same day, prior to the assault, which occurred about 4 o'clock in the afternoon, defendant had taken four or five doses of cocaine, several doses of morphine, and some whisky. Some time in the evening of the 25th of December (the day of the assault) he left his home, going to a saloon—the prosecutor, Tyler, and his brother, and another party accompanying him. At the saloon they took a number of drinks, the party drinking about a pint of whisky. The defendant and prosecutor immediately thereafter walked out on the porch in front of the saloon, and the defendant took hold of the gallery post, and immediately, without any warning, stabbed the prosecutor with a knife. There had been no previous grudge between the parties, nor did any quarrel or altercation precede the stabbing. An officer immediately came up, and carried the defendant to jail. He asked him what he stabbed the boy for, and he said because he had been after him all morning to go home. (There was no evidence of this fact.)

On this state of facts, among other things, the court instructed the jury as follows: "If the defendant, by the voluntary and recent use of

cocaine and morphine or intoxicating liquors, or all of them, put himself in a condition that he was incapable of distinguishing between right and wrong as to the particular act charged against him, and he voluntarily took said cocaine and morphine or intoxicating liquors, knowing that it would produce such state of mind in him, then, although, at the time of the commission of the act, he might not have known what he was doing, or was incapable of distinguishing between right and wrong as to the particular act charged against him, he would not be excusable for the act, if the act was otherwise criminal. If the normal condition of the defendant was that of a sane person, and his mind was not diseased, but was only temporarily dethroned by the recent use of said medicines, or intoxicating liquors, or all of them, and the defendant voluntarily took them, knowing at the time he did so that it would dethrone his mind, then no state of insanity so produced would be a defense to crime. If, however, the defendant, prior to that time, had been affected with disease or bodily suffering, and to cure the disease or allay the suffering he had contracted the use of cocaine and morphine or intoxicating liquors, and that by reason thereof his mind had become, and was at the time of the commission of the act charged against him, diseased to the extent that he had lost control of his mind, and did not know what he was doing, or if he did know what he was doing, if he did not have mind sufficient to distinguish between right and wrong as to the particular act charged against him, then his condition of mind was such as the law would excuse him for any act done in such state of mind so produced."

These charges were excepted to by appellant in the motion for a new trial. It will be seen from these charges that the court made no discrimination between insanity, whether produced by the voluntary recent use of cocaine and morphine or intoxicating liquors, or if insanity was produced by the combined use of all these. We understand our statute to regulate insanity produced by the recent voluntary use of intoxicating liquors, but it does not undertake to prescribe the rule with reference to insanity produced by cocaine or morphine. And, in our opinion, the court committed an error in instructing the jury that, if they believed appellant was insane from the voluntary recent use of cocaine and morphine, it would constitute no defense to the crime alleged, and would go only to the mitigation of the penalty. In our opinion, if appellant was rendered insane from the voluntary recent use of cocaine and morphine, and on account of that did not understand the nature and quality of the act he was doing, and was incapable of forming the intent, then he would not be guilty of an assault with intent to murder. And we go further, and hold that, if his mind was rendered insane by the combined recent use of cocaine and morphine and intoxicating liquors, and that on such account he was not capable of forming the intent necessary to constitute an assault with intent to murder, he would not be guilty of said offense. We believe it is a correct legal principle, where there is insanity produced by other causes in conjunction with the recent use of intoxicating liquor, that an act done in such a state of mind can not be attributed solely to

the recent use of intoxicating liquors. See 1 McClain Crim. Law, sec. 159; Roberts v. People, 19 Mich., 401; Terrill v. State, 74 Wis., 278, 42 N. W. Rep., 243.

For the error of the court in said charges, the judgment is reversed and the cause remanded.

*Reversed and remanded.*