### J. W. Moss v. The State.

#### No. 269.   Decided January 12, 1910.

**Carrying Pistol—Charge of Court—Insanity—Morphine Fiend.**

Where, upon trial for unlawfully carrying a pistol, the evidence showed that, while defendant was on his direct way home, he suddenly turned and involved himself in a difficulty with another, during which he drew the pistol which he was taking home; and there was also evidence that the defendant was addicted to the immoderate use of morphine and whisky, and had taken an overdose at the time of the alleged offense, and was unconscious of what he was doing, the court erred in instructing the jury that such condition, if it existed, could only mitigate the punishment, and refusing a requested charge submitting the law, that, if defendant's mind was unbalanced at the time, to acquit him. Article 41, Penal Code, as to the recent use of intoxicants, did not apply. Following Otto v. State, 47 Texas Crim. Rep., 128, and other cases.

Appeal from the County Court of San Augustine.   Tried below before the Hon. W. C. Ramsey.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Foster & Davis,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for unlawfully carrying a pistol.   The facts disclose that appellant was keeping a hotel in San Augustine, and had been down to the grocery store of Miller Bros. and had borrowed a pistol to carry with him on a trip he had in contemplation to Panola County.   Returning to his hotel from where he had borrowed the pistol, he passed the business house of T. W. Blount a few feet, twenty or twenty-five, perhaps, when he returned to Blount's store, and he and Blount went inside and sat down at a table.   The witness Blount testified: "We were sitting, one on each side of my desk.   He started the conversation with me, and asked me if I owned any interest in the hotel he was running.   I told him I did.   He finally says: 'I don't believe you have got any interest in the hotel,' and cursed me, and rose up from where he was sitting down right in front of me, at the same time reaching his hand in his pocket and pulled out his pistol.   About the time he got his pistol out of his pocket,

and before he had a chance to present it, we, another man who was there and myself, grabbed him and got the pistol, and it went off in the floor. We took the pistol away from him, and about the time we got the pistol some other parties came and took hold of him, and carried him home." This witness testified when appellant passed his store he was traveling the usual and most direct route from Miller Bros. store to his home, the hotel, which was situated directly south of witness' place of business, Miller Bros. store being directly north. I. L. Miller testified to the fact that he had loaned appellant the pistol, and that when he got the pistol he stated that he was going to make a trip to Panola County, and was going off on the evening train. Shortly after this he said he heard of the trouble between Blount and appellant. Appellant testified in his own behalf, and corroborates the witness Miller as to borrowing the pistol, and his intention of going to Panola County, and that it was for that purpose he borrowed the pistol, and that he was going off that evening on the northbound train. He further testified that he had taken a dose of morphine about an hour before he went to Miller to borrow the pistol, and that it must have been an overdose, that he could not tell. That he intended to go to Panola County for the purpose of raising money on his farm to buy out the witness Blount's interest in the hotel that he was running, and that he had no other purpose in borrowing the pistol. He says after leaving Miller, en route home he met a party on the street—does not remember his name—and the man remarked to him, "I am going to take supper with you tonight." At this point appellant testified: "I have no recollection of anything that occurred from that time until about twelve or one o'clock that night. I was crazy. When I gained consciousness I was at my home with Dr. Rawls present waiting on me. He was injecting something in my arm. I did not recover for about two weeks. I was confined to my house for about two weeks; as soon as I could walk around, acting on the advice of my physician and family, I went to the Moody Sanitarium, at San Antonio, where I was treated for the whisky and morphine habit. I have been a victim of that habit for eight years. I was a confirmed morphine fiend." He further states he remained at the sanitarium until he was pronounced cured, after which he returned to San Augustine, and has since lived there, and he further states he is now cured of the habit; that he has not indulged in either morphine or whisky since leaving the sanitarium. Further testifying, he said he had no recollection of ever meeting Mr. Blount, or seeing him, or having a conversation with him. He says: "I do know before that time I had talked of buying out his interest in the hotel that I am now running, and was then running in the town of San Augustine. And I had in my mind to go to Panola County and dispose of some property there and take the proceeds

and buy out Mr. Blount's interest, but I have no recollection of having any conversation with him that afternoon. I had nothing against Blount at the time, and have nothing against him now." The witness Rawls testified he is a practicing physician and surgeon, and was at the time of the incident mentioned, and was well acquainted with appellant, and had occasion on a number of times prior to that to treat him professionally; that he was what would be termed a morphine and whisky fiend. This witness treated appellant while he was sick after the transaction which occurred between Blount and himself; that appellant was confined to his bed for some time; that he afterwards went to the Moody Sanitarium, at San Antonio, for the purpose of being treated for the morphine and whisky habit, and that he did this under the advice of witness as his family physician. Frank Blount testified that he knew where the store of T. W. Blount was located, and that it was about twenty or twenty-two feet from the building that the Farmers & Merchants' State Bank was in; that it was about forty or forty-five feet from the door of the store that Blount was occupying to the door of the bank building. Appellant was somewhere about the bank building when he turned back and went into the store of T. W. Blount where he exhibited his pistol.

1. The court charged the jury as follows: "You are further instructed that if you find from the evidence in this case beyond a reasonable doubt that at the time defendant carried the pistol, if he carried it, that his mind, from the use of morphine or drugs, was in an unbalanced condition that this fact would not avail him of a defense, but may be considered by you in mitigation of his punishment only." Objection was urged to this, and special instruction requested, in substance, submitting to the jury the question of his insanity, that is, the court was requested to instruct the jury, in substance, that if by the use of morphine that his mind was incapable of rational action or knowing what he was doing at the time, they would give him the benefit of this and acquit. We think there was error in the court's charge, and in refusing to give the special instruction as requested by appellant. The court's charge seems to be predicated upon article 41 of the Penal Code, which provides that intoxication produced by the voluntary recent use of intoxicants would not justify an acquittal for a criminal act while the mind is influenced by such intoxicants, but that fact may be considered in mitigation. The terms of that article do not apply to the character of case like the one in hand. The evidence here shows that this party had been addicted to the use of morphine for quite a number of years as well as intoxicants, and it is testified by appellant himself that he had no recollection or knowledge of having engaged in a difficulty with Blount, and had no recollection of the fact that he was in his store; and that he was sick subsequent

to that, confined to his room. His family physician corroborates his statement that he was addicted to the use of morphine and whisky, and sufficiently strong to draw the conclusion that he was what might be popularly termed a morphine fiend. The physician says he was two weeks confined to his bed from the time of this trouble on, and that he had him take a course of treatment in the sanitarium. The terms of article 41, supra, do not apply to this state of facts. This case is not a novel one. See Edwards v. State, 38 Texas Crim. Rep., 386; Edwards v. State, 54 S. W. Rep., 589; Terrill v. State, 74 Wis., 278; Otto v. State, 47 Texas Crim. Rep., 128; Cannon v. State, 41 Texas Crim. Rep., 467, 56 S. W. Rep., 351; Erwin v. State, 10 Texas Crim. App., 700; Burkhard v. State, 18 Texas Crim. App., 599; Smith v. State, 19 Texas Crim. App., 95. These are a sufficient number of cases to indicate the question has been settled in Texas under this character of case, that the jury should be instructed that if the party was insane he should be acquitted. The court's instruction was that this would not avail him as a defense, but could only be considered by them in mitigation of his punishment. This was a very important phase of this case, perhaps the most important. Here appellant and Blount had been friends, there was no occasion for any such conduct on his part. If his mind was not unbalanced, and if he was rational at the time, it would show an unprovoked and unnecessary assault upon Blount, and doubtless for the purpose of killing him. If his mind was unbalanced, as his testimony would show, then it was the act of an unbalanced and irrational mind, and these issues should have been clearly submitted to the jury. The court, therefore, was in error in giving the charge he did, and also in error in refusing to instruct the jury as requested in writing by appellant.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.