**Charles C. DE BERRY, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 27, 1956.

Rehearing Denied May 11, 1956.

C. Ewbank Tucker, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., Frankfort, for appellee.

MONTGOMERY, Judge.

Charles C. DeBerry appeals from a judgment inflicting the death sentence upon a conviction of murder. He was tried separately although indicted jointly with five others. Two grounds for reversal are urged: (1) The trial court failed to give the whole law of the case, in that it failed to give a voluntary manslaughter instruction based on the use of narcotic drugs at the time the homicide was committed; and (2) the jury failed to give the case the consideration it deserved since the verdict was returned twenty minutes after the jury retired.

Appellant, in company with Burney Davis, Jr., Willie Childress, Curtis Coleman, John Lancaster, and Nelson McElroy, Negroes, conspired to enter and to rob the safe at the River Road Country Club near Louisville, Kentucky, on January 2, 1955. They were armed with two pistols and a sawed-off shotgun. McElroy was a professional safecracker.

By agreement, the six conspirators arrived in two cars at Mellwood Park, where further discussion was had concerning their plans. Curtis Coleman previously had worked at the Club. He furnished the information on the layout of the Club, including the duties of the night watchman. It was agreed that some disposition might have to be made of the watchman.

McElroy had a boil on one arm, limiting his use of it. He stayed at a nearby tavern, to be called if needed. Lancaster drove the others to the Club and was to drive McElroy there when called. Coleman stayed outside the Club as lookout.

Davis, Childress, and appellant entered the Club building. On hearing approaching steps, they hid in the women's locker room. There, they were discovered. Appellant fired three shots from a .45 caliber automatic at Richard V. Eddins, the night watchman, thereby killing him. Eddins was unarmed.

Appellant made two full statements admitting the homicide. The first statement consisted of six handwritten pages and the second consisted of six single-spaced typewritten pages. Each statement was in detail. At the trial, appellant, in conflict with the statements, said that he did not enter the Club and that he could not tell the jury whether he killed Eddins because he was "high" on "dope". No mention was made in either statement that appellant had used cocaine or was under the influence of a narcotic drug at the time he shot Eddins.

■ The evidence was in conflict as to whether appellant indulged in the "sniffing" of cocaine furnished by McElroy while on the way to the Club and whether he was under the influence of narcotic drugs at the time of the shooting. Thus, it was a question of fact to be submitted to the jury.

The trial court instructed the jury on murder, conviction of an accomplice, and corroboration of an accomplice's testimony. An instruction on the influence of narcotic drugs was given as follows:

"No. 4. If the jury believe from the evidence in this case that the defendant by reason of the use of narcotic drugs was in such a mental condition at the time referred to in the evidence herein that he did not know what he was doing, or the nature of his acts, and that by reason of such mental condition resulting from the use of narcotic drugs he was not capable at said time and place of forming in his mind a felonious intent to commit the offense charged in the indictment, you will find the defendant not guilty."

Appellant contends that the court should have given an instruction on voluntary manslaughter on the theory that the use by appellant and the resulting influence of the narcotic drug on his mind rendered him incapable of forming or having the felonious intent or malice required to sustain a conviction of murder. No complaint is made to instruction No. 4 above, but appellant urges that the voluntary manslaughter instruction should have been given also. So far as the record shows, no such contention was made at the trial.

All of the testimony shows that appellant agreed to participate in the unlawful venture and was on his way to carry it out before he took the cocaine. Appellant stated that McElroy gave him the cocaine and he used it while in the car on the way to the appointed meeting place with his companions. Thus, appellant had formed the felonious intent to enter the Country Club and rob the safe before using the narcotic drug. The disposition of the night watchman was discussed in the preparation for the robbery.

In considering the influence of the drug, two views may be taken. One, that the felonious intent was formed prior to the drug use and was maintained throughout the venture, or else the influence of the drug was not sufficient to prevent appellant from knowing what he was doing or the consequence of his acts. The use of the drug did not cause, deter, or alter the previously formed intent to do an unlawful act; its only possible effect, if any, was

upon the nerve or the prudence, and being voluntarily assumed is no excuse for a superabundance of nerve or the lack of prudence.

■ The felonious intent formed by appellant to do the unlawful act planned was sufficient to impute to appellant the necessary element of felonious intent or malice for the homicide committed. The jury was justified in inferring felonious intent to commit the murder. One who in the commission of a wrongful act commits another wrong he did not mean to commit is nevertheless liable for the latter wrong. The law implies malice when one deliberately injures another in an unlawful manner. Roberson's Criminal Law, Section 20, page 27; 14 Am.Jur., Criminal Law, Section 26, page 786, and Section 28, page 787. See discussion of imputed malice in Powers v. Commonwealth, 110 Ky. 386, 61 S.W. 735, 63 S.W. 976, 53 L.R.A. 245.

■ The same rule has been held to apply to the use of cocaine and other drugs not taken as a medicine to determine criminal responsibility as applied to that of a person drunk from the voluntary use of intoxicating liquors. Roberson's Criminal Law, Section 69, page 104. One who commits a crime under the influence of a drug should be held guilty if he takes the drug knowing the effect it is likely to have. 1 Wharton and Stille, Med.Jur., Section 245. Appellant previously had used drugs and must have anticipated the probable or possible effect of his use of cocaine.

In Roberson's Criminal Law, Section 63, page 91, the rule is given thus: "Drunkenness will not excuse or condone homicide, and constitutes no defense to an indictment therefor, even when the accused was unconscious of the nature of the act, if that condition of his mind was the result of voluntary intoxication, with a knowledge of the effect of liquor on his passions." Consequently, when one with a proven premeditated determination arms himself and takes intoxicants as a part of his preparation for a homicide, his drunkenness is of no weight to explain away his malice. Roberson's Criminal Law, Section 65, page 97. No valid distinction can be seen between the use of drugs and intoxicating liquor or when the homicide is a consequence of another wrongful but intended act instead of a premeditated homicide. Shannahan v. Commonwealth, 8 Bush 463, 71 Ky. 463, 8 Am.Rep. 465; Harris v. Commonwealth, 183 Ky. 542, 209 S.W. 509; Tate v. Commonwealth, 258 Ky. 685, 80 S.W.2d 817; Hall v. Commonwealth, 258 Ky. 744, 81 S. W.2d 404; Smiddy v. Commonwealth, 287 Ky. 276, 152 S.W.2d 949.

The evil of the rule sought by appellant early was recognized in the Shannahan case above, where it was written:

"* * * men of violent passions and wicked designs would avail themselves of this very principle of law, by becoming drunk in order to take the lives of their fellowmen, with the consciousness on the part of the offender that his drunkenness would be the mitigating feature of his case. The recognition of such a rule of law is but an invitation to men of reckless habits to commit crime; and while their punishment is by incarceration only in the state prison for a few years, the sober man, whose cause for revenge and the desire to take human life therefor is kept within his own breast, for the commission of a like offense is made to suffer death. There is no reason or philosophy in a law that would hang the sober man for murder, and lessen the punishment of the man intoxicated for the same offense, because the latter had voluntarily placed himself in a condition by which he is induced to take human life."

■ The voluntary manslaughter instruction sought by appellant was not justified under the proof of this case, and instruction No. 4, as given by the trial court, was more favorable to appellant than that to which he was entitled.

■ We find no merit in the contention that the jurors did not properly consider the case because they were out only twen-

ty minutes. The members of the jury, undoubtedly, were thinking about the case while hearing the evidence, instructions of the court, and argument of counsel, thus requiring very little time to reach a decision on the guilt and punishment of appellant. Under the facts of this case, it is readily understood how the jury was able to reach its verdict in the time used.

Judgment affirmed.